IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYDIA MONTOYA,<br><br>          Plaintiff,<br>   v.<br><br>MANAGEMENT TRAINING<br>CORPORATION (MTC),<br><br>          Defendant. | 1:10-CV-00451-AWI-MJS<br><br>ORDER GRANTING<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT<br><br>[Doc. #22] |

## I. INTRODUCTION

Plaintiff Lydia Montoya ("Montoya") filed a Complaint against Defendant Management Training Corporation ("MTC") for (1) wrongful demotion, (2) age discrimination, (3) gender discrimination, (4) intentional infliction of emotional distress, and (5) unfair competition and unfair business practices pursuant to California Business & Professions Code § 17200. Compl., ECF No. 2. After MTC terminated Montoya's employment, Montoya amended the Complaint to add claims for (1) wrongful termination in violation of public policy and (2) retaliation pursuant to California Government Code § 12940(h). Am. Compl. 9-10, ECF No. 18. The parties stipulated to dismiss Montoya's original five causes of action against MTC. Stip. to Dismiss, ECF No. 23.

MTC now moves for summary judgment on Montoya's claims for (1) wrongful

termination, (2) retaliation, and (3) punitive damages.  Def.'s Mot. Summ. J., ECF No. 22.  Montoya filed an opposition (Pl.'s Opp'n, ECF No. 25), to which MTC replied (Def.'s Reply, ECF No. 32).  For the reasons that follow, the motion will be GRANTED.

## II.  **FACTUAL BACKGROUND**

Montoya began working as a correctional officer for GEO Group, Inc. on December 13, 1999.  Def.'s Statement of Undisputed Facts ("DMF") ¶ 1, ECF No. 22-2.  Montoya worked for GEO Group at the McFarland correctional facility for approximately five years before moving to Taft Correctional Institution ("Taft") in May 2005.  DMF ¶ 2.  MTC took over the contract to operate Taft in 2007, and hired Plaintiff as a correctional officer on August 20, 2007.  DMF ¶ 3.  Montoya's duties at Taft included searching for contraband, supervising inmates, and providing security for assigned areas.  DMF  ¶ 4.

Montoya was required to complete annual in-service training on a range of subjects, including the use of firearms and control of contraband.  DMF ¶ 5.  At the end of the annual training Montoya was required to demonstrate competency in the use of firearms by qualifying on a firing course.  DMF ¶ 6.  Staff members were allowed three attempts to qualify; those who did not qualify were subject to termination.  DMF ¶ 7.

During 2008, firearms qualification involved firing thirty-six shots at a target (twelve shots each at distances of three, seven, and fifteen yards) using a company-issued Smith & Wesson nine millimeter pistol.  DMF ¶ 8.  Passing required hitting the target at least twenty-nine out of thirty-six times.  DMF ¶ 9.

Montoya attempted to qualify on February 1, 2008, but recorded only twenty out of thirty-six hits on the target.  DMF ¶ 11.  She returned to the firing range on February 8, 2008 but scored only five hits on her first attempt, twenty-three hits on her second attempt, and six hits on her third attempt.  DMF ¶ 12.  She tried again a week later, but failed on two attempts.  DMF ¶ 13.

On February 22, 2008, MTC issued Montoya a written Notice of Caution ("Notice") regarding her failure to pass the firearms qualification.  The Notice expressly gave Montoya

additional time to practice.  DMF ¶ 14.  Montoya returned to the firing range on March 21, 2008 and failed to qualify on three attempts.  DMF ¶ 15.  She tried again on March 28, 2008 but failed all three attempts.  DMF ¶ 16.  MTC gave Montoya more opportunities to qualify than any other Correctional Officer, yet she was the only one (out of more than one hundred thirty) who did not qualify in 2008.  DMF ¶ 17.

Instead of discharging her, Warden Neal Adler informed Montoya of two open positions that did not require firearms qualifications: recreational specialist and kitchen supervisor.  DMF ¶ 18.  Montoya indicated a preference for the kitchen supervisor position, but was placed in the lower-paying recreational specialist position.  Montoya claims Deputy Warden Daugherty made this decision because the kitchen supervisor position paid more than the correctional officer position.  DMF ¶ 19.  Montoya was forty-two years old at the time of her demotion.  DMF ¶ 20.

On or about May 14, 2008, Montoya filed a complaint of employment discrimination with the California Department of Fair Employment and Housing ("DFEH").  DMF ¶ 32.  Montoya alleged that she was demoted solely based on her age.  She did not claim discrimination on the basis of sex or any other protected status.  DMF ¶ 33.

On February 12, 2009, Adler announced a change in the firearms competency requirements.  DMF ¶ 21.  The change was made in response to "considerable anxiety" among some of the staff about the re-qualification process.  DMF ¶ 22.  Adler explained the new standard as follows:

> In the future, custody staff will go to the range for the full day as in the past, with the morning dedicated to refamiliarization with the weapon and safety issues and the afternoon spent shooting the round of fire. A technical score will not be taken. All staff will demonstrate their competency by attending class, relearning the weapons, and then simply shooting.

DMF ¶ 22.  Montoya was allowed to re-qualify under this new standard, and was reinstated to a correctional officer position in March 2009.  DMF ¶ 23.

On March 13, 2009, the DFEH informed Montoya that it was closing her case, could not conclude based on its investigation whether MTC had violated the Fair Employment and

3

Housing Act ("FEHA"), and issued her a right-to-sue notice. DMF ¶ 34. The Equal Employment Opportunity Commission ("EEOC") adopted the DFEH's findings and issued Montoya a right-to-sue notice on April 9, 2009. DMF ¶ 35. Montoya filed this action on March 12, 2010. DMF ¶ 36.

On July 16, 2010, MTC's attorneys took Montoya's deposition regarding her allegations of MTC's discrimination. Pl.'s Mat. Facts ("PMF") ¶ 6, ECF No. 28. MTC's Human Resource Manager, Mia Warren, was present at Montoya's deposition. PMF ¶ 7.

On September 20, 2010 at approximately 8:30 p.m., while on duty as a correctional officer, Montoya observed an inmate in Taft's A3B dormitory pull a razor blade glued to popsicle sticks from under a table. DMF ¶ 24. Montoya did not confiscate the weapon, report it to a supervisor, search the area, or search the inmates. DMF ¶ 25. On September 21, 2010 at approximately 2:00 p.m., Montoya relieved Correctional Officer Dickey at the end of Dickey's shift on the A3B housing unit and told Dickey about the contraband she had observed. DMF ¶ 26. Dickey thought that Montoya felt uneasy confronting the inmates without any backup, and told her she would take care of it and get the contraband out. PMF ¶¶ 14-15. Montoya worked her entire shift that day and did not secure the contraband or report it to her supervisor. On September 22, 2010 at approximately 10:40 a.m., Dickey recovered four improvised knives (wooden sticks with razor blades attached) from under the table and turned them into Sergeant Rahe. DMF ¶ 27, PMF ¶ 16. Rahe told Dickey that the incident was "no big deal" and not to worry about it.[1] PMF ¶ 17.

---

[1] MTC objects that Rahe's statement is inadmissible hearsay under Federal Rule of Evidence 802. Federal Rule of Evidence 801(d)(2)(D) provides that a statement is not hearsay if it "is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed. R. Evid. 801(d)(2)(D). There is no reason to believe that Rahe was not an employee of MTC. Rahe's statement is admissible as an admission by a party opponent under Rule 801(d)(2)(D).

MTC further contends that Rahe's statement is immaterial because there is no evidence he knew anything about Montoya's role in the incident, how long Dickey knew about the contraband before acting, or whether Rahe had any involvement in the decision to discharge Montoya. Despite MTC's criticisms, Rahe's statement is relevant because it does "have any

On September 23, 2010, Lieutenant Hammons told Dickey that she "was not in any trouble" and that the popsicle sticks were probably being used for arts and crafts, as the inmates like to use them for this purpose.[2]  PMF ¶ 18.  Inmates can purchase razor blades from staff at MTC for shaving, and the poor inmates are given razor blades for free.  PMF ¶ 19.

Montoya was placed on administrative leave pending an investigation of the matter. DMF ¶ 28.  On September 22, 2010, Montoya wrote the following statement:

> I had a run in with the same unit about the cleanliness of that unit A3B. And all sign petitions to get rid of me in that unit for doing my job. And I did put their best friend in SHU Hold for having the same contraband . . ..

Warren Decl. Ex. E, D0383, ECF No. 22-3; PMF ¶ 10.  On September 27, 2010, Montoya gave a statement to MTC that she observed an inmate pull out a "contraband made of two popsicle sticks glue [sic] together with razor attach [sic] from under first table . . . and began cutting some pieces of wood with it."  PMF ¶ 8; Warren Decl. Ex. E, D0385.  On September 28, 2010, Montoya wrote Warren that she had found contraband before on inmates and reported it.  PMF ¶¶ 9, 11; Warren Decl., Ex. E, 4.

On September 27, 2010, Warren asked to speak with Dickey about the incident.  PMF ¶ 20.  Warren told Dickey that she "wasn't in any kind of trouble," but that she just wanted to ask her questions about Montoya.  PMF ¶ 21.  Warren asked Dickey why she told Montoya she would take care of the situation with the inmates.  PMF ¶ 22.  Dickey told Warren that Montoya felt uneasy about confronting the inmates that day because she did not have back up and did not feel safe.  PMF ¶ 23.  Warren told Dickey that she was being placed on administrative leave that same day. PMF ¶ 24.

---

tendency to make the existence of" pretext "more probable . . . than it would be without the evidence."  Fed. R. Evid. 401.

[2]MTC raises the same objections to Hammons' statement as against Rahe's statement. Like Rahe's statement, Hammons' statement is admissible as an admission by a party opponent, Fed. R. Evid. 801(d)(2)(D), and relevant to show pretext, Fed. R. Evid. 401.

5

At the conclusion of the investigation, MTC discharged both Montoya and Dickey. DMF ¶ 29. No other MTC Correctional Officer at Taft has received lesser discipline than termination for knowingly permitting dangerous contraband to remain in the possession of an inmate. DMF ¶ 31.

On October 8, 2010, Dickey went to MTC and turned in her uniforms and company property. PMF ¶ 26. While at MTC, the Warden of Programs, Raylene Daugherty spoke to Dickey and asked if she was okay. PMF ¶ 27. Dickey replied that she thought the firing was wrong and that she was just trying to help out Montoya. PMF ¶ 28. Daugherty responded that Dickey should not have helped out Montoya.[3] PMF ¶ 29.

Prior to her termination, Dickey was a correctional officer for approximately thirteen years. While a correctional officer for MTC, Dickey exceeded expectations and received very good annual performance reviews from her supervisors and managers. PMF ¶ 31. Dickey had confiscated contraband before, including a large amount of drugs from a unit that led to the additional sentence of ten years for an inmate. PMF ¶ 32. Prior to her termination, Dickey had never been written up for anything or received any discipline. PMF ¶ 33.

Montoya filed a second DFEH charge on October 28, 2010 alleging that she was terminated in retaliation for filing this lawsuit. DMF ¶ 36. Montoya requested, and was issued, an immediate right-to-sue notice. *Id.* Montoya later amended the Complaint in this action to add claims based on her termination. DMF ¶ 37.

---

[3] Montoya asserts that after Dickey was fired, Lieutenant Flirt and Major Friend, both Dickey and Montoya's supervisors, said that MTC should not have fired Dickey for the incident. *See* PMF ¶ 30. As evidence, Montoya cites the following sentence from Dickey's declaration: "In addition, Sergeant McDonald, told me after I was fired that both Lieutenant Flirt and Major Friend, both my superiors at MTC, told her that I should not have been fired at MTC for this incident." Dickey Decl. ¶ 14, ECF No. 27. MTC objects to Dickey's statement as hearsay within hearsay. Both statements could fall under the hearsay exception for admissions by party opponents. Fed. R. Evid. 801(d)(2)(D). Dickey, however, does not have personal knowledge of Flirt and Friend's statement. Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Dickey's statement is inadmissible under Rule 602, and there is no other evidence to support PMF ¶ 30.

### III. **LEGAL STANDARD**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is material if it could affect the outcome of the suit under the governing substantive law; "irrelevant" or "unnecessary" factual disputes are not considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986) (internal quotation marks omitted). If the moving party would bear the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the non-moving party bears the burden of proof on an issue, the moving party can prevail by "merely pointing out that there is an absence of evidence" to support the non-moving party's case. *Id.*

If the moving party does not meet its burden, "[s]ummary judgment may be resisted and must be denied on no other grounds than that the movant has failed to meet its burden of demonstrating the absence of triable issues." *Henry v. Gill Indus.*, 983 F.2d 943, 950 (9th Cir. 1993).

If the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *FTC v.*

7

*Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009).  A non-movant "must show a genuine issue of fact by presenting *affirmative evidence* from which a jury could find in his favor."  *Id.*  In ruling on a motion for summary judgment a court does not make credibility determinations or weigh evidence.  *See Anderson*, 477 U.S. at 255.  Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.*  Only admissible evidence is considered in deciding a motion for summary judgment.  *Soremekun*, 509 F.3d at 984.  "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment."  *Id*.

### IV.  DISCUSSION

**A.   Wrongful Termination and Retaliation**

MTC argues that it is entitled to summary judgment on Montoya's wrongful termination and retaliation claims because MTC had a legitimate, nondiscriminatory reason for terminating Montoya, i.e., Montoya's admitted failure to report and control dangerous contraband.  Montoya contends that MTC terminated her in retaliation for filing a lawsuit against them, terminated Dickey to legitimize her termination, and did not terminate similarly situated employees who engaged in comparable conduct.

**1.   Legal Framework**

The California Fair Employment and Housing Act ("FEHA") prohibits an employer from discriminating against any person "in terms of compensation or in terms, conditions, or privileges of employment" on the basis of specified protected classes, including age.  Cal. Gov't Code § 12940(a).  Under FEHA, it is unlawful for any employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under [FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [FEHA]."  Cal. Gov't Code § 12940(h).

California common law permits employees who have been discharged in violation of fundamental principles of public policy to maintain a tort action against their employer.  *Tameny*

*v. Atlantic Richfield Co.*, 27 Cal. 3d 167, 176, 164 Cal. Rptr. 839 (1980). "The central assertion of a claim of wrongful termination in violation of public policy is that the employer's motives for terminating the employee are so contrary to fundamental norms that the termination inflicted an injury sounding in tort." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 702, 101 Cal. Rptr. 3d 773 (2009).

When a plaintiff alleges retaliatory employment termination, either under FEHA or as a claim in violation of public policy, California follows the Title VII burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *Loggins v. Kaiser Permanente Int'l*, 151 Cal. App. 4th 1102, 1108-1109, 60 Cal. Rptr. 3d 45 (2007); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042, 32 Cal. Rptr. 3d 436 (2005). Under the three-part *McDonnell Douglas* test, the complainant must first establish a prima facie case of discrimination by showing that: "(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Yanowitz*, 36 Cal. 4th at 1042. If the employee establishes a prima facie case of discrimination, there is a presumption of discrimination, and the burden shifts to the employer to offer a legitimate, non-retaliatory reason for the adverse employment action. *Reid v. Google*, 50 Cal. 4th 512, 520 n.2, 113 Cal. Rptr. 3d 327 (2010). If the employer produces a legitimate reason, there is no longer a presumption of retaliation, and the burden shifts back to the employee to show that the employer's reasons are pretexts for discrimination, or produce other evidence of intentional discrimination. *Id.*; *Yanowitz*, 36 Cal. 4th at 1042.

    **2.**    **Discussion**

        **a.**    **Prima Facie Showing**

To establish a prima facie case, a plaintiff must show "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were "based on a [prohibited] discriminatory criterion . . .." *Reid*, 50 Cal. 4th at 520

9

n.2. "The prima facie burden is light; the evidence necessary to sustain the burden is minimal." *Sandell v. Taylor-Lustig, Inc.*, 188 Cal. App. 4th 297, 310 (2010).

MTC does not challenge the first prong of the *McDonnell Douglas* test. It is undisputed that Montoya engaged in a protected activity, i.e., filing a lawsuit against MTC for alleged violation of FEHA. It is also undisputed that MTC subjected Montoya to an adverse employment action, i.e., terminating her employment. Montoya alleges that her termination was in retaliation for asserting her rights under FEHA, filing the Complaint, and giving her deposition. For purposes of its summary judgment motion, MTC assumes that Montoya can meet the "light" and "minimal" burden of establishing a prima facie case of discrimination.

### b. Legitimate, Non-Discriminatory Reason for Termination

To demonstrate a legitimate, nondiscriminatory reason for terminating Montoya, MTC "must show that the procedure by which [Montoya] was terminated was validly and fairly devised and administered to serve a legitimate business purpose." *Dep't of Fair Emp't & Hous. v. Lucent*, 642 F.3d 728, 745-746 (9th Cir. 2011) (quoting *Hanson v. Lucky Stores*, 87 Cal. Rptr. 2d 487, 492 (1999)). "A reason is 'legitimate' if it is 'facially unrelated to prohibited bias, and which if true, would thus preclude a finding of discrimination.'" *Reid*, 50 Cal. 4th at 520 n.2.

MTC has met its burden under the second phase of the *McDonnell Douglas* test. MTC asserts that it terminated Montoya because she did not confiscate or report dangerous contraband to a supervisor. Instead, Montoya went home and told another correctional officer, Dicky, about the contraband the following day. Dickey in turn went home and did not recover the contraband until the next morning. Montoya first observed the inmate with the makeshift knife on September 20, 2010 at approximately 8:30 p.m.; Dickey confiscated four improvised knives on September 22, 2010 at approximately 10:40 a.m. Allowing makeshift weapons to remain in an inmate's possession for over thirty-eight hours is a facially legitimate, non-discriminatory reason for terminating Montoya's employment.

     **c.**     **Pretext**

"A plaintiff can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003) (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1127 (9th Cir. 2000)).  Circumstantial evidence must be "specific" and "substantial." *Dep't of Fair Emp't & Hous.*, 642 F.3d at 746 (quoting *Godwin v. Hunt Wesson*, 150 F.3d 1217, 1221 (9th Cir. 1998)).  An employee cannot meet its burden by simply showing that the employer's decision was "wrong, mistaken, or unwise." *Dep't of Fair Emp't & Hous.*, 642 F.3d at 746 (quoting *Morgan v. Regents of the Univ. of Cal.*, 88 Cal. App. 4th 52, 105 Cal. Rptr. 2d 652, 670 (2000)).  "Rather, the employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence . . . and hence infer that the employer did not act for the . . . non-discriminatory reasons." *Dep't of Fair Emp't & Hous.*, 642 F.3d at 746 (quoting *Morgan*, 105 Cal. Rptr. 2d at 670). "[A] plaintiff's showing of pretext, *combined* with sufficient prima facie evidence of an act motivated by discrimination, may permit a finding of discriminatory intent, and may thus preclude judgment as a matter of law for the employer." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 361, 100 Cal. Rptr. 2d 352 (2000).

Viewing the evidence in the light most favorable to Montoya and drawing all justifiable inferences in her favor, *Anderson*, 477 U.S. at 255, there is not enough evidence to create a genuine, material dispute regarding whether MTC's stated reason for terminating Montoya was a pretext for discrimination.

First, Montoya contends that MTC terminated her employment shortly after she filed an age discrimination lawsuit and gave her deposition. Montoya filed the Complaint on March 12, 2010 and gave her deposition on July 16, 2010.  MTC terminated Montoya on October 8, 2010, Compl. ¶ 52, approximately seven months after Montoya filed the Complaint and approximately

11

three months after Montoya gave her deposition.  Although MTC did not terminate Montoya immediately after she filed this lawsuit or gave her deposition, the temporal proximity can support an inference that Montoya's termination was retaliatory.  *See, e.g., Allen v. Iranon*, 283 F.3d 1070, 1078 (9th Cir. 2002) ("Although an inference from temporal proximity would have been stronger had the gap in time been smaller, an eleven-month gap in time is within the range that has been found to support an inference that an employment decision was retaliatory."). Because MTC has offered a legitimate, nondiscriminatory reason for termination, however, temporal proximity alone is not sufficient to raise a triable issue as to pretext.  *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 353 (2008).  ("Standing alone against Defendant's strongly supported legitimate reason for terminating [Plaintiff], temporal proximity does not amount to more than a scintilla of evidence of [discrimination].").

      Second, Montoya asserts that the incident was not a big deal and was used as a pretext for her retaliatory termination.  As evidence, Montoya asserts that inmates can purchase razor blades from staff at MTC for shaving, and poor inmates are given razor blades for free.  PMF ¶ 19. Montoya also points to Lieutenant Hammons' speculative statement that the popsicle sticks were probably being used for arts and crafts, as the inmates like to use them for this purpose.  PMF ¶ 18.  MTC rejoins that the incident was serious: Montoya observed an inmate with a deadly makeshift weapon, and allowed the weapon to remain in the inmate population over two nights and more than thirty-eight hours.  Montoya's written statements to MTC confirm her understanding of the gravity of the incident.  Montoya refers repeatedly to the makeshift weapon as "contraband"; asserts that she has "found contraband before on inmates and reported it," PMF ¶ 9, 11; states that she put another inmate in SHU hold for having the "same contraband," Warren Decl. Ex. E, D0383, ECF No. 22-3; and admits that "If I could change and go back I would of [sic] course retrieved the contraband myself and notified the sergeant that nite [sic] and do the write up."  *Id.*  Montoya's evidence that the contraband was not a "big deal" and was being used for "arts and crafts" are speculative "bald assertions" that amount to a "mere scintilla"

of evidence.  *See FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) ("A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment.")  Drawing all inferences in Montoya's favor, Montoya's evidence does not create a triable issue regarding whether Montoya's failure to seize makeshift knives was blown out of proportion as pretext to terminate Montoya.

Third, Montoya argues that MTC's decision to terminate Montoya for her first infraction is suspect and alone shows pretext.  Montoya asserts that she was fearful for her safety at the time, told Dickey about the contraband, and assisted with the investigation to locate the responsible party.  Montoya further asserts that she has found contraband before on inmates and reported it.  PMF ¶ 9, 11.  MTC's Rules of Conduct permit "immediate dismissal" for Category II infractions.  MTC charged Montoya with violating two Category II infractions: 4 ("Neglect of duty or refusal to perform work assigned.") and 15 ("Violation of any company or facility rules, policies, the employee handbook, or federal, state or local laws.").  Warren Decl. ¶ 4, ECF No. 22-3.  It is undisputed that no other MTC Correctional Officer at Taft has received lesser discipline than termination for knowingly permitting dangerous contraband to remain in an inmate's possession.  DMF ¶ 31.  Contrary to Montoya's argument, MTC's decision to terminate Montoya for her first offense alone does not prove pretext.  Pretext cannot be demonstrated by simply showing that MTC's decision was "wrong, mistaken or unwise." *Dep't of Fair Emp't & Hous.*, 642 F.3d at 746 (quoting *Morgan*, 88 Cal. App. 4th 52).

Fourth, Montoya contends that MTC's statements to Dickey regarding the incident puts at issue MTC's credibility and motive.  Warren told Dickey that she "wasn't in any kind of trouble," but that she just wanted to ask her questions about Montoya.  PMF ¶ 21.  Sergeant Rahe told Dickey that the incident was "no big deal" and not to worry about it.  PMF ¶ 17.  Lieutenant Hammons told Dickey that she was "not in any trouble" and that the sticks were probably being used for arts and crafts, as the inmates like to use them for that purpose.  PMF ¶ 18.  Warden Daugherty asked Dickey if she was okay and told her she should not have helped Montoya.  PMF

13

¶ 29. MTC asserts, without evidence, that these statements were made without knowledge of Dickey's delay in reporting or controlling the contraband. The court cannot weigh evidence or make credibility determinations. *See Anderson*, 477 U.S. at 255. Drawing all inferences in the light most favorable to Montoya and drawing all justifiable inferences in her favor, however, these statements are not sufficient to create a material issue whether MTC terminated Dickey to legitimize Montoya's termination. Like Montoya, Dickey went home and knowingly allowed dangerous contraband to remain in the inmate population overnight. Dickey did not act to confiscate the makeshift knives until the following morning. It is undisputed that no other MTC Correctional Officer at Taft has received lesser discipline than termination for knowingly permitting dangerous contraband to remain in an inmate's possession. DMF ¶ 31.

Fifth, Montoya argues that MTC did not terminate numerous correctional officers who have engaged in comparable or more serious conduct. A showing that MTC treated similarly situated employees outside Montoya's protected class more favorably would be probative of pretext. *Vasquez v. Cnty. of L.A.*, 349 F.3d 636, 641 (9th Cir. 2003). Individuals are "similarly situated" when they have similar jobs and display similar conduct of comparable seriousness. *Id.* (concluding that employees were not similarly situated where the type and severity of the alleged offense was dissimilar). Individuals "need not be identical; they must simply be similar 'in all *material* respects.'" *Nicholson v. Hyannis Air Serv.*, 580 F.3d 1116, 1125 (9th Cir. 2010) (quoting *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006)). This is a "fact-intensive inquiry, and what facts are material will vary depending on the case." *Hawn v. Exec. Jet Mgmt.*, 615 F.3d 1151, 1157 (9th Cir. 2010).

During discovery MTC produced a spreadsheet of infractions and discipline issued to Taft correctional officers between August 2007 and October 2010. Of the eighty-nine potential officers and approximately one hundred forty infractions, Montoya contends that the following entries show infractions of comparable or greater seriousness than her infraction:

14

| ID | Date | Step | Category | Infraction Detail | Discipline |
|----|------|------|----------|-------------------|------------|
| 4 | 9/20/10 | 1st | II(15) | Failure to properly conduct an inspection on a vehicle entering the facility through the rear sally post. | Notice of caution with one-day suspension |
| 9 | 11/21/07 | 1st | II(2) | Admitted to Investigative Specialist of harassing an inmate on 9/10/07 and 9/17/07 by comments and/or actions | Unsatisfactory performance critique |
| 20 | 2/21/10 | 3rd | II(4) | Failure to properly do inmate count. Left both doors unsecure while doing count. | Notice of caution; employee performance log |
| 21 | 9/3/09 | 1st | I(2) | Failure to properly secure handcuffs during hospital duty. Another staff member found handcuffs on hospital room floor. | Unsatisfactory performance critique |
| 23 | 6/15/10 | 1st | I(2) | Placed a low level inmate and a medium level inmate in the same recreation cage. One of the inmates assaulted the other inmate. | Unsatisfactory performance critique |
| 23 | 10/5/10 | 2nd | II(4) | Failed to review inmate SHU documentation. This caused two inmates to be involved in a physical altercation. | Notice of caution, three-day suspension |
| 28 | 6/23/10 | 1st | II(15, 28) | Failed to properly restrain an inmate before opening the cell housing door. Did not handcuff inmate before opening door. | Notice of caution, two-day suspension |
| 31 | 10/5/07 | 1st | II(2) | Failed to be accountable for inmate workers. At time of census, missing thirty-four inmate workers. Needs to be accountable for inmate workers and do more frequent checks of inmate work crews. | Performance improvement plan |
| 46 | 11/2/09 | 2nd | I(2) | Failed to conduct a proper urine analysis. Did not provide date sample was taken. | Unsatisfactory performance critique |
| 49 | 4/13/09 | 4th | I(2) | Did not effectively search visitor while passing through metal detector | Performance improvement plan |

| ID | Date | Step | Category | Infraction Detail | Discipline |
|----|------|------|----------|-------------------|------------|
| 54 | 8/26/08 | 1st | I(2) | Did not properly supervise the landscape crew, who was working with gas powered equipment. The inmate crew was not wearing personal protective equipment. | Documented verbal warning |
| 58 | 6/22/10 | 1st | I(2), II(15, 28) | Failed to properly conduct a search on a vehicle wanting entrance to the institution. | Notice of caution, two-day suspension |
| 60 | 2/4/10 | 1st | I(2) | Failed to complete an accurate accountability of keys in Central Control | Unsatisfactory performance critique |
| 61 | 1/29/08 | 1st | I(2) | On 1/25/08 it was determined that a fabric seam ripper was lost or stolen; however, both [...] and [61] accounted for it in the Tool Log Book daily. The tool was not properly accounted for nor reported as stated in policy. | Unsatisfactory performance critique |
| 63 | 11/29/10 | 3rd | II(4) | Failed to secure the back dock and tool cage. Failed to complete the daily tool check out log. | Notice of caution, three-day suspension |
| 66 | 6/23/10 | 3rd | II(4) | Failed to secure the back dock and tool cage. Failed to complete the daily tool check out log. | Notice of caution, three-day suspension. |
| 71 | 12/2/09 | 1st | I(2) | Failed to properly secure the welding shop, where class A tools are stored. Left an inmate in shop without proper staff supervision. | Notice of caution. |
| 83 | 2/11/10 | 2nd | I(11) | Brought a laser pointer (soft contraband) into the facility without authorization. Admittedly shined the laser on others, including inmates. | Notice of caution, five-day suspension |
| 84 | 2/12/10 | 1st | I(11) | Participated in horseplay. Admitted to shining a laser pointer soft contraband to inmates, causing alarm and complaints of physical harm. | Notice of caution, three-day suspension |
| 87 | 10/7/10 | 1st | II(4, 15, 2 | Left her weapon unsecured. Did not have it on her person like required per policy. | Notice of caution, two-day suspension |

Of these infractions, correctional officers 4, 20, 21, 23, 28, 31, 49, 54, 58, 60, 61, 63, 66, 71, and 87 placed the safety of staff and inmates at risk. MTC contends that these situations are not comparable because the correctional officers did not intentionally fail to report the presence of dangerous contraband. Rather, MTC asserts that the correctional officers through negligence created a risk that contraband *could* fall into the possession of inmates. It is undisputed that no other MTC Correctional Officer at Taft has received lesser discipline than termination for knowingly permitting dangerous contraband to remain in the possession of an inmate. DMF ¶ 31. Based on the information provided, there is not enough detail to assess whether the safety infractions were similar to Montoya's infraction. Montoya further does not offer any specific, detailed evidence to show that correctional officers 4, 20, 21, 23, 28, 31, 49, 54, 58, 60, 61, 63, 66, 71, and 87 were outside Montoya's protected class, i.e., that they had never opposed any practices under FEHA, or filed a complaint, testified or assisted in any proceeding under FEHA. Montoya further does not provide any evidence that the same individuals were involved in issuing the discipline decision as were involved in the decision to terminate Montoya. Montoya has not shown that MTC treated similarly situated individuals outside Montoya's protected class more favorably. The only other similarly situated individual, Dickey, was terminated.

Viewing the evidence in the light most favorable to Montoya and drawing all justifiable inferences in her favor, *Anderson*, 477 U.S. at 255, Montoya has not provided sufficient evidence to create a genuine, material dispute regarding whether MTC's stated reason for terminating Montoya was a pretext for discrimination. MTC's motion for summary judgment as to Montoya's claims for wrongful termination is GRANTED.

**B.     Punitive Damages**

1.     **Legal Framework**

Under California law, punitive damages "may be available in actions not arising from contract, where fraud, oppression, or malice is proved." *Moradi–Shalal v. Fireman's Fund Ins. Cos.*, 46 Cal.3d 287, 305, 250 Cal.Rptr. 116 (1988); *Jordan v. Allstate Ins. Co.*, 148 Cal.App.4th

17

1062, 1080, 56 Cal.Rptr.3d 312 (2007). "Malice" is "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ.Code § 3294(c)(1). "Oppression" is "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." Cal. Civ.Code § 3294(c)(2). The plaintiff must prove fraud, oppression, or malice by "clear and convincing evidence." Cal. Civ.Code § 3294(a). "Clear and convincing evidence" is evidence "sufficient to support a finding of high probability." *Gathenji v. Autozoners, LLC*, 703 F. Supp. 2d 1017, 1035 (E. D. Cal. 2010) (quoting *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1105 (9th Cir. 1992)).

### 2. Discussion

Montoya has not provided any evidence to raise issues of fact regarding whether MTC acted with fraud, oppression, or malice. MTC's motion for summary judgment as to Montoya's claim for punitive damages is GRANTED.

### V. CONCLUSION

IT IS HEREBY ORDERED that Defendants' motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Dated:   October 27, 2011

CHIEF UNITED STATES DISTRICT JUDGE